UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert Hechter Silverman,

Plaintiff,

v.

Julie Hechter Silverman,

Defendant.

Civ. File No. 00-2274 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Plaintiff Robert Hechter Silverman's Petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") as codified in 42 U.S.C. § 11601 et seq., and Defendant Julie Hechter Silverman's Motion to Dismiss the Petition. For the following reasons, the Court grants Defendant's Motion to Dismiss.

**INTRODUCTION**

Plaintiff Robert Hechter Silverman and Defendant Julie Hechter Silverman were married in Seattle, Washington, on July 16, 1989, and lived in Poughkeepsie, New York, until 1995. The Silvermans have two sons, Samuel, 8, and Jacob, 5. In 1995, the family moved to Minnesota. In March 1999, the couple sold their home in Minnesota. Mrs. Silverman asserts that she and Mr. Silverman were experiencing marital difficulties. At this time, Mrs. Silverman moved with the children to her father's residence in Plymouth, Minnesota. Also at this time, Mr. Silverman moved to LaCrosse, Wisconsin. Mrs.

FILED NOV 13 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD NOV 13 2000
DEPUTY CLERK

Silverman asserts that the couple attempted to reconcile and agreed to move to Israel temporarily. Indeed, in August 1999, the family moved to Israel. Mr. Silverman characterizes the move to Israel as permanent, and presents evidence in support of his position. (See Pl.'s Petition, R. Silverman Aff. & Exs. A-D; Pl.'s Mem. Opp'n Mot. Dismiss, R. Silverman Aff. & Ex. A). Thereafter, the couple agreed to file a joint petition of bankruptcy in the United States Bankruptcy Court for the District of Minnesota. In October 1999, Mrs. Silverman traveled to Minnesota to file the bankruptcy petition, which both parties signed. In the petition, the parties stated under oath that their permanent address was 1300 West Medicine Lake Road, Plymouth, Minnesota. (See Baxter Aff., Ex. A.) The final discharge hearing for the bankruptcy was held in Minnesota in January 2000. Both parties attended and stated under oath that their permanent address was 1300 West Medicine Lake Road, Plymouth, Minnesota. (See Def.'s Mem. Supp. Mot. Dismiss at 2.)

While living in Israel, Mr. Silverman apparently submitted a request for divorce, which he withdrew, and applied for an Ex Parte Order restraining Mrs. Silverman from leaving Israel. (See R. Silverman Aff. ¶¶ 14-15.) Mrs. Silverman asserts that under Israeli law, she had no right to challenge that Order but was legally prevented from leaving Israel from October 1999 until Mr. Silverman lifted the Ex Parte Order in January 2000. (See Def.'s Mem. Supp. Mot. Dismiss at 3.) Mrs. Silverman also asserts that Mr. Silverman verbally threatened her against leaving Israel and threatened her concerning the custody of their children. (See id.) In June 2000, Mr. Silverman allowed Mrs. Silverman and the

children to travel to the United States. (See R. Silverman Aff., Ex. D.) Mr. Silverman asserts that the trip was a summer vacation scheduled to end in August 2000. (See R. Silverman Aff., Ex. B.) Mrs. Silverman asserts that she did not plan to return to Israel, but rather, planned to end the temporary move to Israel by remaining home in Minnesota, which she and the children would have done in October 1999 if they had been allowed to return. (See Def.'s Mem. Supp. Mot. Dismiss p. 3.)

On August 10, 2000, Mrs. Silverman filed a Petition for Legal Separation and Custody Decree in the District Court of Hennepin County, Minnesota. Mr. Silverman was personally served with that petition on August 12, 2000, and responded to the petition by challenging the court's jurisdiction. On October 10, 2000, the matter was heard before Referee David L. Piper. Although Mr. Silverman did not personally appear for the hearing, he was represented by his attorney, Susan McKay. Through his attorney, Mr. Silverman argued, among other things, that Minnesota courts lacked subject matter jurisdiction over the temporary custody determination. He argued that the family's move to Israel was permanent and that Israel is the children's place of habitual residence. (See Baxter Aff., Ex. D.) He did not file a Hague Petition in the state forum, but rather, requested a stay of proceedings until such determination could be made. On October 10, 2000, he filed the underlying Hague Petition in this Court. On October 17, 2000, Referee Piper issued an Order granting Mrs. Silverman temporary sole legal and physical custody, appointing a guardian ad litem for the children, and ordering that the Passport Office enter the names of the children into its central

computer in order to prohibit their removal from the United States. (See Order Granting Petitioner Temporary Custody and Appointing Guardian Ad Litem for the Minor Children, MF 259-616, Oct. 17, 2000.) Judge Charles Porter approved the Order and the Findings of Fact. (See id.) On November 2, 2000, Mrs. Silverman filed a motion to dismiss the Hague Petition.

**DISCUSSION**

**A. The Hague Convention**

The Hague Convention was adopted by the signatory nations, including the United States and Israel, "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, Preamble. A court in the abducted-to nation has jurisdiction to decide the merits of an abduction claim, but not the merits of the underlying custody dispute. See Hague Convention, Article 19; 42 U.S.C. § 11601(b)(4). The Hague Convention is generally intended to restore the status quo ante and to deter parents from crossing borders in search of a more sympathetic court. See Rydder v. Rydder, 49 F.3d 369, 372 (8th Cir. 1995). In an action for the return of a child, a petitioner must prove by a preponderance of the evidence that the child was removed or retained wrongfully from the place of habitual residence. See 42 U.S.C. § 11603(e)(1); Nunez-Escudero v. Tice-Menley, 58 F.3d 374, 375-76 (8th Cir. 1995); Freier v. Freier, 969 F. Supp. 436, 440 (E.D. Mich. 1996). A respondent who opposes

the return of a child may advance any of the affirmative defenses to return listed in Articles 12, 13, or 20 of the Hague Convention. See 42 U.S.C. § 11603(e)(2); In re Ponath, 829 F. Supp. 363, 365 (D. Utah 1993). A Court applying the Hague convention should construe these exceptions narrowly. See Rydder, 49 F.3d at 372.

**B. Younger Abstention**

Although federal courts generally "have a strict duty" to decide cases over which they have jurisdiction, there are "exceptional circumstances" that can justify abstaining. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). Defendant argues that exceptional circumstances exist in this case, and that this case is appropriate for Younger abstention. See Younger v. Harris, 401 U.S. 37 (1971). Under the Younger abstention doctrine, a federal court may refuse to hear a case "that would interfere with a pending state criminal proceeding or with certain types of state civil proceedings." Quackenbush, 517 U.S. at 716.

According to the Eighth Circuit, "Younger directs federal courts to abstain from hearing cases when (1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented." Fuller v. Ulland, 76 F.3d 957, 959 (8th Cir. 1996) (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)).

It is undisputed that there is an ongoing custody proceeding in Minnesota state court

between Julie and Robert Silverman. Mrs. Silverman filed a Petition for Legal Separation and Custody Decree in the District Court of Hennepin County on August 10, 2000. Mr. Silverman was personally served with that petition on August 12, 2000, and responded to the petition by challenging the court's jurisdiction. On October 10, 2000, the matter was heard before Referee David L. Piper. Although Mr. Silverman did not personally appear for the hearing, he was represented by his attorney, Susan McKay. It is also undisputed that the state court is addressing a comparable issue to what Mr. Silverman's Hague Convention petition would have this Court address–whether the most appropriate forum for a custody determination is Minnesota or Israel.

In assessing the importance of the state's interest, the Court looks to "the importance of the generic proceeding to the State." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 365 (1989). States have a very strong interest in domestic relations matters generally and child custody questions in particular. See Moore v. Sims, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern.").

Here, Mr. Silverman has failed to show that the state courts will not afford him adequate opportunity to litigate his petition under the Hague Convention. Indeed, the legislation governing the Convention explicitly vests concurrent jurisdiction over such claims in both federal and state courts. See 42 U.S.C. § 11603(a). Moreover, Mr. Silverman availed himself of state court to the extent that he challenged subject matter jurisdiction and argued that Israel is the "habitual residence" of the children under case law interpreting the Hague

Convention. See H.C. v. Koppel, 203 F.3d 610, 613 (9th Cir. 2000) (finding Younger abstention appropriate when plaintiffs had "already raised some of the same...issues" in the state courts and could appeal any adverse determinations there). He can and was afforded the opportunity to raise his Hague Convention petition in state court, but instead chose to file his petition in federal court--interestingly enough, on the same day as the state court hearing.

This Court recognizes that a court must determine whether the Hague Convention is applicable before making any custody determinations. See Nunez-Escudero, 58 F.3d at 376. The state court has awarded Mrs. Silverman temporary custody, appointed a guardian ad litem for the children, and ordered that the Passport Office enter the names of the children into its central computer in order to prohibit their removal from the United States.

Notwithstanding the foregoing, there was no Hague Convention application before the state court at the time of its decision, and the state court has not taken any further action with respect to awarding permanent custody. See Grieve v. Tamerin, No. 00-CV-3824, 2000 LEXIS 12210, at *10 (E.D.N.Y. 2000) (applying Younger abstention doctrine on federal petition for return of child to Israel in case similar to the present matter). The state court proceeding is ongoing, and more importantly, still available as a forum in which Mr. Silverman's Hague Convention petition may be heard. This Court is not willing to enter conflicting orders when the issue may be resolved in the state forum.

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, the Court

grants Defendant's Motion to Dismiss.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss (Clerk Doc. No. 16) is **GRANTED**; and

2. Plaintiff Petition for Return of the Child to Petitioner/Plaintiff pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (Clerk Doc. No. 1) is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 13, 2000

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: NOV 13 2000

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*