**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| ROBERT HECHTER SILVERMAN, Petitioner, | Civil No. 00-2274 (JRT) |
| v. | **ORDER** |
| JULIE HECHTER SILVERMAN, Respondent. | |

---

Susan Anderson McKay, MCKAY LAW OFFICE, 11359 Windrow Drive, Eden Prairie, MN 55344, for petitioner.

Michael Baxter, BAXTER ENGEN, 17645 Juniper Path, Suite 225, Lakeville, MN 55044, for respondent.

Petitioner Robert Hechter Silverman ("Silverman" or "petitioner") requests attorneys fees, court costs, and transportation costs in this action brought pursuant to the Hague Convention, 19 I.L.M. 1501 (1980), and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601 *et seq*. Respondent Julie Schuster (f/k/a Julie Hechter Silverman) ("Schuster" or "respondent") moved to strike the motion. In the alternative, respondent resists the motion as untimely, and also argues that the fees are "clearly inappropriate" due to her tenuous financial circumstances and the harm an award of fees of this magnitude would have on the minor children. For the reasons discussed below, petitioner's request for attorneys' fees and costs is denied.

## BACKGROUND

Robert Silverman and Julie Schuster lived in Minnesota with their two minor children from 1995 until August 1999, when they moved to Israel. In June 2000, Schuster left Israel with the two children and returned to Minnesota. On August 10, 2000 Schuster filed a petition in Minnesota state court seeking legal separation from Silverman and custody of the children. Silverman then filed a "Request for Return of Abducted Children" with the National Center for Missing and Exploited Children ("NCMEC"). Then on October 5, 2000, he filed a Hague petition in this Court seeking the return of the children to Israel. He also filed a motion in the Minnesota state court on October 10, 2000, seeking either dismissal of the custody proceedings for lack of subject matter jurisdiction or a stay of the custody proceeding pending resolution of his NCMEC request. The State court granted Schuster temporary sole legal custody and temporary sole physical custody of the children.

In November 2000, United States District Judge Paul A. Magnuson granted respondent's motion to dismiss this action on abstention grounds, concluding that there was an ongoing state proceeding which implicates important state interests and that Silverman has an adequate opportunity to raise the Hague issues in state court.[1] *Silverman v. Silverman*, Civ. No. 00-2274 at 5-7 (PAM/JGL) (Nov. 13, 2000). The Eighth Circuit reversed this decision, and the matter was assigned to the undersigned after remand from the Eighth Circuit.

---

[1] The Hague convention explicitly vests concurrent jurisdiction in both state and federal courts. 42 U.S.C. § 11603(a).

This Court then held an evidentiary hearing and in May of 2002, issued detailed Findings of Facts and Conclusions of Law. The Court determined that the children's habitual residence was the United States, and alternatively held that respondent Schuster had established that return of the children to Israel posed a grave risk defense by clear and convincing evidence. The Court therefore denied the petition for return. The Eighth Circuit affirmed this decision, and then granted a rehearing en banc. Sitting en banc, the Circuit reversed this Court's decision denying the petition for return and remanded to this Court for further proceedings.

This Court then held additional hearings and issued additional orders to facilitate the safe and efficient return of the children to Israel. As part of this process, the Court ordered Silverman to either pay for the return tickets, or reimburse Schuster for the cost of the return tickets.

The children were returned to Israel in September of 2003. Their mother returned with them, and has remained in Israel as their primary caretaker. As such, she was forced to quit her job in the United States. Respondent avers that she has faced considerable expenses in setting up a household in Israel to meet the minimal needs of the parties' children. In addition, the children need tutoring in Hebrew (for which respondent pays $440.00 per month), and additional academic help. According to an affidavit submitted by respondent, she pays $550.00 per month in rent, and must pay over $400.00 per month for the children's psychological services. Other monthly expenses include $110 for extracurricular activities, approximately $500.00 for food, and expenses for car insurance

and gas. Schuster is not currently employed, and relies on her husband (who remains in the United States) for financial support.

Respondent avers that petitioner has not paid child support in a timely fashion, or in the proper and necessary amounts. Respondent submitted evidence that petitioner did not pay support as ordered by the Minnesota court, and similarly has not paid support ordered by the Israeli courts. Unpaid child support in the United States amounts to approximately $12,000, and proceedings are ongoing in State court to collect that amount.

The Israeli courts are currently addressing the parties' custody dispute. Respondent avers that the Israeli courts have granted her primary custody, and petitioner has visitation rights for a 24-hour period on three out of four Fridays. The Israeli courts have ordered petitioner to pay approximately $1,334.00 per month in child support for the months of April, May, and June. For July, August, and September, petitioner has been ordered to pay about $743.50 per month. Respondent claims that petitioner has paid only a portion of what he owes, and refuses to pay the rest. Petitioner also has not paid the portion of the children's airline tickets to Israel, despite being specifically ordered to do so by this Court.

Petitioner denies that he is in arrears on child support payments, and suggests that respondent has misrepresented her economic status to this Court.

Respondent reports that the underlying dispute is scheduled for trial in the Israeli court in September.

## ANALYSIS

### I. Standard applicable to request for fees under Hague Convention

The Hague Convention provides that "Any court ordering the return of a child . . . shall order the respondent to pay necessary expenses . . . including court costs [and] legal fees . . . unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3). This Court "has the duty, under 42 U.S.C. § 11607(b)(3), to order the payment of necessary expenses and legal fees, subject to a broad caveat denoted by the words, 'clearly inappropriate.'" *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004) (noting that the statute gives "the district court broad discretion in its effort to comply with the Hague Convention consistently with our own laws and standards."). Petitioner is clearly the "prevailing party." The Court must determine whether the requested costs were "necessary" and whether an award would be "clearly inappropriate." In so doing, the Court may reduce the hours claimed on the basis of duplication, padding, or frivolity. Courts applying this statute have reduced fees and other costs where the award would be clearly inappropriate. *See, e.g.*, *Whallon*, 356 F.3d at 141 (noting that district court's reduction by two-thirds of the total fee award was within the discretion of the district court); *Pesin v. Rodriguez*, 244 F.3d 1250, 1253 (11th Cir. 2001) (denying fees because respondent failed to comply with local rules requiring that fee be requested within 30 days); *Rydder v. Rydder*, 49 F.3d 369, 373-74 (8th Cir. 1995) (reducing fees by almost half "because of Mrs. Rydder's straitened financial circumstances"); *Berendsen v. Nichols*, 938 F. Supp. 737, 739 (D. Kan. 1996) (reducing requested fees and costs by 15% in light of father's financial status and support of his children).

In this case, petitioner requests $54,503.75 as attorney fees and $11,291.30 as court costs. Petitioner requests what the Court believes is a "startlingly high sum" of $65,795.05. *Whallon v. Lynn*, 2003 WL 1906174 (D. Mass. April 18, 2003) (noting the requested fee of $64,866.17 was "startlingly high"), *aff'd* 356 F.3d 138 (1st Cir. 2004).[2]

## II. Timeliness

Respondent first argues that the request for fees is not timely. Local Rule 54.3 provides that in all cases in which attorney's fees are sought (other than cases to which the Equal Access to Justice Act applies) the party seeking an award of fees shall: "(1) Within **30 days of entry of judgment** in the case, file pursuant to LR 5.2 and serve an itemized motion for the award of fees; or, (2) Within 15 days after the entry of judgment in the case, serve on all counsel of record and deliver to the Clerk of Court a Notice of Intent to Claim an Award of Attorney's Fees." LR 5.2 (emphasis added). The Court may excuse failure to comply with this local rule if the noncompliant party shows good cause. *Id.* The Committee notes following this rule indicate that "[i]n general, applications for attorney's fees should be submitted promptly after a determination of the case on the merits. Prompt submission aids the trial Judge, whose memory of the work of the lawyers is fresh, and facilitates appellate consideration of the whole controversy. As

[2] The *Whallon* case is the only case that the Court was able to uncover in which a sum even approaching $60,000 was requested. *Berendsen v. Nichols*, 938 F. Supp. 737 (D. Kan. 1996) (reducing award from $11,651.84 to $5,840.15); *Freier v. Freier*, 985 F. Supp. 710 (E.D. Mich. 1997) (reducing award from just over $30,000 requested to $15,737.07); *Whallon*, 2003 WL 1906174 (requested fee was over $60,000 and court awarded just over $22,000).

a general procedure, then, the rule requires attorney's fees motions to be submitted within 30 days of the entry of judgment." *Id.* (1991 Committee notes).

This Court ordered the Clerk of Court to enter judgment on May 9, 2002. The notice of appeal was filed, but there was no indication that attorney's fees would be appealed. There was no request for attorney fees to this Court. The Eighth Circuit did not address attorney's fees in either the panel or the en banc opinion. The Eighth Circuit's en banc decision was rendered on August 5, 2003, and the mandate issued August 14, 2003. Specifically, the Circuit remanded "for entry of **an order** that the Silverman children be returned to Israel for a custody determination in the Israeli courts." *Silverman v. Silverman*, 338 F.3d 886, 901 (8th Cir. 2003) (emphasis added).

As directed by the Circuit, this Court conducted further proceedings consistent with the Eighth Circuit's mandate, and issued orders on August 28, 2003 (detailing specifics of return) and September 18, 2003 (regarding travel plans and payment for tickets). Petitioner brought this motion for fees and costs on September 29, 2003; a year and a half after this Court addressed the case on the merits and entered judgment, and six weeks after the mandate issued from the Eighth Circuit.

When a party fails to timely move for fees and costs, courts generally disallow the award. *See Quarles v. Oxford Mun. Separate Sch. Dist.*, 868 F.2d 750, 758 (5th Cir. 1989). In this case, the Court will give petitioner the benefit of the doubt and assume that the Court's August 28, 2003 Order constituted "final judgment."[3] As a result, petitioner's

[3] The Court makes this assumption without deciding whether the Court's August 28, 2003 Order constitutes final judgment. The better practice, as indicated clearly by the Local Rule and

(Footnote continued on next page.)

request for fees and costs is just barely timely. Fed. R. Civ. P. 6(a); LR 1.1(f) and 5.4. Counting begins on August 29, 2003. Thirty days from August 29, 2003 was September 27, 2003 – a Saturday. When the final day falls on a Saturday, the time is extended to the next business day. Fed. R. Civ. P. 6(a) ("The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the district court inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days."). The motion was filed on September 29, 2003, the following Monday.

## III. Clearly Inappropriate

Respondent also argues that the Court should reduce or eliminate the claimed fees because the fees are clearly inappropriate. First, respondent argues that the requested fees would impair her ability to care for the children. She is currently unemployed, and must support two households—one in the United States and one in Israel. Respondent also paid extensive legal fees in both Minnesota ($70,000) and Israel ($20,000 as of respondent's submission in opposition for attorney fees). The ability to care for dependents is well-established as an important consideration in awards of fees and costs in Hague Convention cases. *See Whallon*, 356 F.3d at 140 (noting its agreement "with

---

(Footnote continued.)

the notes following the rule, is to request fees as soon as possible. In this instance, petitioner became the prevailing party after the Eighth Circuit en banc opinion reversed the panel decision. A petition for attorneys' fees should have been submitted promptly, instead of nearly two months after the Eighth Circuit's mandate issued.

the *Berendsen*[, 938 F. Supp. 737] and *Rydder*[, 49 F.3d 369] courts that preserving the ability of a respondent to care for her child is an important factor to consider.).

Another ground for reduction or elimination of fees cited by respondent is petitioner's financial neglect of the children. This is also a factor that courts typically consider when determining whether an award is "clearly inappropriate." *Whallon*, 356 F.3d at 140. Also considered by courts is whether one, or "both parties bear responsibility for the degree of enmity between them" if that enmity "was in large part responsible for the legal costs." *Whallon*, 2003 WL 1906174 at *4. In this case, petitioner bears at least some responsibility for the acrimony between the parties that doubtless led to increased attorney fees. The Court found, in its August 28, 2003 order, that petitioner was not credible, and that he had been physically and mentally abusive toward respondent.[4] This factor is appropriately considered in determining fees.

Each of these factors, applied to the unique facts of this case, support a determination that an award of over $60,000 in fees and costs would be "clearly inappropriate." Though many courts have reduced significantly requested fees, *see supra* n.2, the Court's research has not revealed a case in which a court eliminated all fees on any of the above grounds, and respondent does not direct the Court to such a case. Nonetheless, the statute very clearly contemplates such a result, providing that fees shall be awarded "unless the respondent establishes that such order would be clearly

---

[4] Despite the fact that the Eighth Circuit, in the en banc majority decision, minimized the abusive behavior, the Circuit did not disturb this Court's factual findings, or credibility determinations.

inappropriate." 42 U.S.C. § 11607(b)(3). In addition, the Court's discretion is broad. *Whallon*, 356 F.3d at 140.

After careful consideration of the relevant factors, the Court finds that respondent has met her burden to establish that an award of fees, in this case, would be "clearly inappropriate." The Court finds that respondent is unable to absorb the necessarily minimal expenses for her family in addition to any fee award, therefore an award of fees would impair significantly her ability to care for her children. In addition, the Court finds that respondent has established that petitioner has not abided by court orders, and has failed to provide timely and adequate financial support for the children. Petitioner's refusal to participate in settlement negotiations in Israel also supports the Court's decision. Respondent has also established that petitioner has been physically and psychologically abusive toward her.

## IV. "Necessary" Expenses

In the alternative, if the Court **had** found that an award of fees was not "clearly inappropriate," the Court would not award the "startling" request of $65,795.05. Some of the fees clearly are unnecessary, and a portion of the fees – those attributable to the proceedings in State court – arguably are not properly awarded in this proceeding. Similarly, there appear to be numerous entries related to the proceedings in Israeli courts. Those fees are not properly awarded by this Court. Due to insufficiently detailed timekeeping, there is no way of determining with certainty which of the fees are

attributable to the State court matter and/or the Israeli court matter, and which are attributable to this matter.[5]

In addition, many of the fees are insufficiently detailed to award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (reducing fee award for failure to detail time entries); *Brown v. Smythe*, 1993 WL 481543 (E.D. Pa. Nov. 18, 1993) (citing *Hensley*). Many entries contain no information about the subject, for example, "review e-mail correspondence." Such entries are not appropriately awarded. Other entries contain compound tasks, and the Court is unable to ascertain the amount of time spent on a particular task, and cannot tell, therefore, whether that amount of time is reasonable. In addition, some tasks are billed at a rate of $175 per hour, when the tasks are more appropriately billed at a lower rate. A significant amount of fees would be reduced in this category.[6]

A significant portion of fees are attributable to individuals who are not counsel of record for this matter. Of course, there is no prohibition on other partners or associates working on this case, but the Court has absolutely no way of knowing who the timekeepers are. Given this lack of information, the Court cannot ascertain whether the hourly rate is reasonable, and the Court cannot award those particular fees. A total of $2,822 is attributable to unknown timekeepers, and would not properly be awarded.

---

[5] At least $637.50 was attributable to the Hennepin and Israeli matters. It is likely that significantly more fees are attributable to the matters before the other courts.

[6] Because the Court does not award any fees in this matter, the Court will not detail the reductions.

In addition to these "line item" reductions, the Court would reduce the overall award by at least 35% to reflect excessive time billed for research and excessive time spent writing various briefs and motions. Further, 15% would be excised to reflect the underutilization of paralegals and less senior associates to research issues, prepare correspondence, draft simple motions, and other matters more properly billed at a lower rate. Finally, a fair portion of these litigation expenses are attributable to unyielding positions taken by petitioner and his counsel. If the Court had not found an award of fees "clearly inappropriate" the Court would further reduce the overall fee by a substantial percentage to reflect easily avoidable expenses.[7]

If ever there was a case in which the requested fees were "clearly inappropriate," it would be this one. Not only would an award of attorneys fees and costs be clearly inappropriate, it would be an injustice and result in substantial hardship to respondent and the children. Both parties should absorb their own fees and costs in this dispute, which should have been resolved a long time ago on a more amicable basis.

[7] The Court notes that both sides, on occasion, took questionable positions during this litigation which led to increased fees.

**ORDER**

Based upon the foregoing, the submissions of the parties and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Respondent's motion to strike petitioner's request for an award of attorney fees, court costs, and transportation costs [Docket No. 71] is **DENIED.**

2. Petitioner's request for an award of attorney fees, court costs, and transportation costs [Docket No. 66] is **DENIED.**

DATED: August 26, 2004
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge